IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN KRANKOWSKI, et al. | : | |
| | : | |
| Plaintiffs | : | 08-CV-1595 |
| | : | |
| v. | : | JUDGE VANASKIE |
| | : | |
| TIMOTHY O'NEIL, et al., | : | |
| | : | |
| Defendants | : | |

MEMORANDUM

Dissatisfied with her treatment during, as well as the results of, child support proceedings in the Court of Common Pleas of Northumberland County and the Superior Court of Pennsylvania, Plaintiff Susan Krankowski, proceeding *pro se,* brought this civil rights action pursuant to 42 U.S.C. § 1983[1] on her own behalf and on behalf of her autistic and mentally challenged minor child.[2]  Defendants, with the exception of Defendant Timothy

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

[2] The claims brought on behalf of the minor child will be dismissed, without prejudice, because Ms. Krankowski "may not represent [her] child in federal court as a non-lawyer parent."  Lazaridis v. Wehmer, 591 F.3d 666, 672 (3d Cir. 2010).  Instead, as recognized in Osei-Afriyie v. Med. Coll. of Pennsylvania, 937 F.2d 876, 882-83 (3d Cir. 1991), "a non-

J. O'Neil, have moved to dismiss, asserting, *inter alia,* that this Court lacks jurisdiction to adjudicate Plaintiff's claims as they amount to a challenge to the state court child support rulings, and, as such, are barred by application of the Rooker/Feldman doctrine.[3]  Finding merit in Defendants' jurisdictional challenge, this Court will grant the motion to dismiss.

I. BACKGROUND

Ms. Krankowski and Defendant Timothy O'Neil are the parents of an autistic and mentally-challenged daughter born in 1996.[4]  Ms. Krankowski has found it necessary to

---

parent attorney must be represented by counsel in bringing an action on behalf of his or her child."  Even though the competency of Ms. Krankowski, who has a law degree but is not admitted to practice in Pennsylvania is not in question and no party has raised the question of her standing to present claims on behalf of her daughter, this Court has an obligation to raise the problem sua sponte.  Id. at 883.  Where, as here, an unrepresented parent brings claims on behalf of a minor child, it is appropriate to dismiss the child's claims without prejudice, "to accrue for statute of limitations purposes when [she] turns eighteen years old, or sooner, if [she] becomes an emancipated minor."  Harris-Thomas v. Christina Sch. Dist., 145 F. App'x 714, 715 (3d Cir. 2005); see also Woodruff v. Hamilton Twp. Pub. Schools, 305 F. App'x 833, 835-36 (3d Cir. 2009); Banks-Bennett v. O'Brien, 293 F. App'x 108, 109 (3d Cir. 2008); Bayer v. Monroe County Children & Youth Services, No. 3:04-CV-2505, 2005 WL 2216585, at *4 (M.D. Pa. Sept. 12, 2005).  Accordingly, the Plaintiff's minor daughter will be dismissed from this action, without prejudice to the right of the child to bring claims on her own behalf through counsel, either now or within the limitations period that will begin to run upon attaining the age of majority or emancipation, whichever is sooner.

[3]  The attorney who represents the moving Defendants, contending that he erroneously entered an appearance on behalf of O'Neil, has moved for leave to withdraw that appearance.  (Dkt. Entry 19.)  Accepting the assertion that the entry of appearance was a mistake and concluding that Plaintiff will not be prejudiced, this Court will grant the motion for leave to withdraw the appearance on behalf of Defendant O'Neil.

[4]  Mr. O'Neil, a civilian employee of the United States Department of Defense, lives in Germany.  (Am. Compl. ¶ 21-2.)

seek judicial intervention, both in state and federal court, on several occasions in relation to their daughter, who is in her custody.[5]  This action is brought against Northumberland County Commissioners Vinnie Clausi, Frank Sawicki, and Kurt Masser; Northumberland County Domestic Relations staff members Cynthia Price, Shelley Supatina, Brian Moroskie, and Michael Seward; and Mr. O'Neil.

In June of 2005, Ms. Krankowski petitioned to modify an existing child support order, claiming that Mr. O'Neil should be paying substantially more than he was required to remit. (Am. Compl. ¶¶ 1-2.)  In November, 2005, Mr. Seward conducted a combined "hearing and conference." (Id. at ¶ 3.)  Ms. Krankowski unsuccessfully requested, inter alia, that Seward recuse himself. (Id.)  Plaintiff alleges that Mr. Seward and Mr. O'Neil, who participated via telephone, "snickered and laughed" throughout the hearing. (Id. at ¶ 4.)  Subsequently, Plaintiff Krankowski learned that her child support was reduced from $1,086 per month to $920 per month. (Id. at ¶ 5.)

In January of 2006, a hearing was held before Judge Saylor of the Northumberland County Court of Common Pleas.[6]  (Id. at ¶ 6.)  Ms. Supatina was present at this proceeding.

---

[5] Two prior actions were brought in federal court by Ms Krankowski.  The first, docketed to No. 00-CV-01797, was dismissed on the Order of the Hon. James F. McClure, Jr., the day after it was filed.  The second action, docketed to No. 02-01614, was dismissed by the Hon. Malcolm Muir on September 16, 2003, after Ms. Krankowski failed to appear for a court-sanctioned deposition and failed to comply with several court Orders.

[6] Judge Saylor was originally named as a defendant in this action, but was dismissed by this Court's Order of December 11, 2008. (Dkt. Entry 7.)

(Id.)  At the hearing, Plaintiff requested all of Mr. O'Neil's financial information, which, she alleges, Ms. Supatina had refused to provide.  (Id. at ¶ 8.)  Judge Saylor advised Plaintiff that she would have to make a written discovery request for the financial information.  (Id.)

In June, 2006, another hearing was held, the only proceeding for which a record was made.  (Id. at ¶ 10.)  For the first time, Plaintiff received Mr. O'Neil's financial information.  (Id.)  In July, 2006, oral argument was held.  (Id. at ¶ 12.)  Plaintiff estimated that $2,000 per month, without any extraordinary expenses, and with no income imputed to Plaintiff, would be an appropriate amount of child support.  (Id.)  Allegedly, a court reporter was present, but did not transcribe any record of the oral argument.  Plaintiff also claims that Judge Saylor's law clerk "smirked" as Plaintiff addressed the court.  (Id. at ¶ 13.)

On August 24, 2006, Judge Saylor entered an order awarding child support in the amount of $1,387 per month.  See Krankowski v. O'Neil, 928 A.2d 284, 285 (Pa. Super. 2007).  Plaintiff claims that the child support was "once again . . . computed in error."  (Id. at ¶ 16.)  She asserts that the amount awarded was about $1,000 less than called for by the 2005 child support guidelines as a result of the erroneous exclusion of various components of Mr. O'Neil's income.  (Id.)  Ms. Krankowski further alleges that her calls to Mr. Moroskie of the Domestic Relations unit were not returned.  (Id.)

Both Mr. O'Neil and Ms. Krankowski appealed the child support award.  In an opinion published at Krankowski v. O'Neil, 928 A.2d 284 (Pa. Super. 2007), the Superior Court

4

affirmed the award. Addressing Mr. O'Neil's contentions, the Pennsylvania Superior Court held that (1) Mr. O'Neil's living quarter and post allowances as a civilian employee were properly included in his net income for purposes of calculating child support; and (2) the trial court was not required to assign any earning capacity to Ms. Krankowski, who has a law degree but is not currently licensed to practice law, given the extraordinary demands imposed upon her in raising her daughter. Turning to Ms. Krankowski's appeal, the Superior Court held that the calculation of child support was "amply supported by the record," and that Judge Saylor's "upward deviation" of ten percent (10%) was appropriate "given the circumstances of this case."[7] Id. at 287.

In January, 2008, Plaintiff contacted County Commissioner Clausi regarding problems she was having with her child's dental insurance and the "miscalculated support." (Am. Compl. ¶ 17.) Mr. Clausi referred Plaintiff to Ms. Rose Marquardt, who informed her that "this was 'a problem with the courts [sic] system.'" (Id.)

In March, 2008, Plaintiff went to retrieve the case file from the Northumberland County Court. (Id. at ¶ 18.) Eventually, a court employee located the file. (Id.) Plaintiff was told she could make notes of the file, but she was not permitted to make any photographic copies. (Id.) Plaintiff noticed that there were only two "parts" of the file, where

---

[7] The brief filed by Ms. Krankowski with the Superior Court, available through Westlaw, includes her arguments that various components of Mr. O'Neil's income were improperly excluded from the child support determination.

there should have been "at least (5) excluding the transcript."[8]  (Id.)

In March, 2008, after the Judges of Northumberland County Court of Common Pleas recused themselves from the matter, Plaintiff's child support claim was transferred to the Columbia County Court of Common Pleas for a decision regarding dental insurance.  (Id. at ¶ 19.)  The dental issue was resolved when Mr. O'Neil obtained private dental insurance for the child, and the case was returned to Northumberland County in November, 2008.  (Id.)  Plaintiff alleges that upon receipt of the file the Northumberland County Domestic Relations unit "lowered Plaintiff's support even further," providing Plaintiff with an allegedly fabricated accounting sheet indicating that Mr. O'Neil had paid all arrears in full.[9]  (Id. at ¶ 20.)

The Amended Complaint contains five counts.  The first claim for relief asserts that Plaintiff was denied Substantive Due Process of the Fourteenth Amendment by all Defendants, and that the Takings Clause of the Fifth Amendment was violated by the deliberate reduction in Mr. O'Neil's earnings by Defendants Supatina and Seward in order to reduce the child support order, and the intentional affirmation of the miscalculation by Defendants Moraskie, Price, and O'Neil's attorney.  (Id. at ¶¶ 25-32.)  All Defendants purportedly acted in concert to appropriate Plaintiff's monetary and child support interests

---

[8] The Superior Court did state, "We note with displeasure that a full trial court docket was not included in the certified record." Krankowski, 928 A.2d at 285 n.4.

[9] Plaintiff alleges that she is receiving approximately $1,278 per month.  (Am. Complaint, at ¶ 32.)

6

without providing just compensation.  (Id. at ¶ 25.)

The second claim for relief, asserting violations of the Procedural Due Process component of the Fourteenth Amendment, alleges Defendants Price, Supatina, and Moroskie denied Plaintiff access to Mr. O'Neil's financial information before the hearing conducted by Mr. Seward, and failed to provide Mr. O'Neil's full financial situation prior to the June 2006 hearing before Judge Saylor.  (Id. at ¶ 34-6.)  Plaintiff also complains that she "[was] denied a recorded hearing at oral argument. . . ."  (Id. at ¶ 36.)   Additionally, it is alleged that Plaintiff was denied a fair judicial review because Defendants removed contents of the case file, Judge Saylor's law clerk "narrowed Plaintiffs [sic] issues to omit the miscalculation of support[,]" Defendants denied Plaintiff a fair and impartial tribunal at all levels of the proceedings, and Supatina and Moroskie have occasionally denied Plaintiff access to their case file at the Domestic Relations unit.  (Id. at ¶¶ 37-9.)

Count III asserts another Substantive Due Process Violation based upon the contention that Defendants denied Plaintiff "fundamental rights."  Plaintiff claims that Defendants abridged the Free Speech protections afforded by the First Amendment in that Defendants intended to chill Plaintiff's speech, as she is known to have "always spoke[n] out against the county government . . . ."  (Id. at ¶¶ 41-3.)  Also, Plaintiff alleges that Defendants have "trampled" her right to be a stay-at-home mother who cares for her special needs child and advocates for special needs child support and denied Plaintiff equal access

7

to the "Title IV-D" program as well as to the court system. (Id. at ¶¶ 44-51.)

The fourth claim for relief presents alleged violations of the Equal Protection clause of the Fourteenth Amendment. Plaintiff contends that Price, Supatina, and Moroskie intentionally applied the laws inconsistently, discriminating against Plaintiff; Supatina and Seward deliberately miscalculated the child support in order to discriminate against Plaintiff; and Defendants treated Plaintiff differently in a retaliation for her "whistle blowing" against Northumberland County. (Id. at ¶¶ 54-8.) Plaintiff asserts that for those aspects of the child support claim where she was "similarly situated to other litigants," she was treated differently, and for those aspects of the claim where she was not similarly situated to others, e.g,, special needs of her daughter, she was "treated like other litigants." (Id. ¶ 57.) Plaintiff also claims that she was treated differently because she is poor and did not have an attorney. (Id. at ¶¶ 63-5.) Plaintiff maintains that she and her minor daughter are a class of one *vis a vis* Mr. O'Neil, who received preferential treatment, and that they are "arguably a [member of a] class of others who do not have an attorney, and/or do not have an attorney who is politically connected to a particular agency or agency attorney or a particular political party which comports to that of a judge or hearing officer on any child support case." (Id. at ¶ 66).

Count V asserts a section 1983 claim for alleged abuse of process. Plaintiff contends that she is entitled to fully and fairly litigate her claims without under harassment

8

or hardship. (Id. at ¶ 72.) Plaintiff then launches into a veritable jeremiad of wrongful conduct in Northumberland County stretching back more than a decade, with many of the alleged incidents involving persons other than Plaintiff and the Defendants named in this action. (Id. at ¶¶ 75-95.)

As relief, Plaintiff seeks, *inter alia*, "immediate payment of all child support in accordance with state/federal guidelines due and owing . . . from June 2005 to present," plus "[a]ll future child support payments as properly calculated in accordance with the law, as they accrue and are due and owing." (Id., ad damnum clause.) She also asks for compensatory, punitive, and "[c]onsequential damages," as well as attorney fees and costs of suit.

II. DISCUSSION

A. Standard of Review

The defense motion presents the threshold question of whether this Court has jurisdiction, i.e., the authority to adjudicate Plaintiff's claims. Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. "'At issue in a Rule 12(b)(1) motion is the court's very power to hear the case.'" Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 686 (W.D. Pa. 2009). "As the party asserting jurisdiction, the plaintiff bears the burden of showing that . . . her claims are properly before the court." Id.

A Rule 12(b)(1) motion "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Warner v. McVey, No. 08-55, 2009 WL 703416, at *2 (W.D. Pa. Mar. 16, 2009) (citing Gould Elecs. Inc.v. United States, 220 F.3d 169, 176 (3d Cir. 2000)). "Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true. In contrast, a trial court considering a factual attack accords plaintiff's allegations no presumption of truth." Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002).

With respect to a factual challenge, a court "is not limited to considering only the allegations on the face of the complaint. . . ." Walters v. United States, No. 4:CV-07-0990, 2008 WL 191476, at *1 (M.D. Pa. Jan. 22, 2008) (citing Carpet Group Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000)). As noted by the Third Circuit Court of Appeals, review is "not confined to the allegations in the complaint and [courts] can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000). Additionally, "disputed material facts do not prevent the court from evaluating the merits of jurisdictional claims." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Simply put, the Court is "free to weigh the evidence and satisfy itself whether it has the power to hear the case." Carpet Group, 227 F.3d at 69.

  B.  The Court Lacks Jurisdiction to Hear Plaintiff's Claims

Defendants argue that this Court lacks jurisdiction to hear Plaintiff's claims by virtue of application of the Rooker-Feldman doctrine.[10] (Defs.' Br. Support at 4-7.) Plaintiff counters that the Rooker-Feldman doctrine is narrow, and does not extend to her federal law claims, although acknowledging that "most of the Defendants [sic] wrongful conduct did occur while the parties were involved in state court proceedings. . . ." (Pltf. Br. Opp'n at 2, Dkt. Entry 31.) Additionally, Plaintiff claims that under the Full Faith and Credit Clause federal courts have the power to declare state court judgments void ab initio when the state court decision is tainted by due process violations.[11] (Id.)

---

[10] The doctrine is based upon the Court's holdings in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983), and Rooker v. Fid. Trust. Co., 263 U.S. 413, 416 (1923).

[11] Plaintiff erroneously cites International Longshoremen's Association, AFL-CIO v. Davis, 476 U.S. 380 (1986), a federal law preemption case, to support her Full Faith and Credit Clause argument. The United States Supreme Court in International Longshoremen's Association held that when a state law is preempted by the National Labor Relations Act, "state courts lack the very power to adjudicate the claims that trigger preemption." Int'l Longshoremen's, 476 U.S. at 398. In a footnote discussing Kalb v. Feuerstein, 308 U.S. 433, 438 (1940), involving a procedural default in a foreclosure action, the Supreme Court noted that federal law deprived the state court of jurisdiction, and the state court judgment was not only erroneous, but void as "beyond [the state court's] power." Id. at 393 n.11. In this case, there is no issue of preemption, and the child support order was certainly well within the state court's power.

  Also, contrary to Plaintiff's assertion, World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286 (1980), does not support Plaintiff's position. In World-Wide, the Supreme Court stated "[a] judgment rendered in violation of due process is void in the rendering state and is not entitled to full faith and credit elsewhere." Id. at 291 (citing

11

Federal Courts have an obligation to ensure that jurisdictional requirements are properly satisfied in order to adjudicate a matter. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (citing Marbury v. Madison, 5 U.S. 137 (1803)). The law is well settled that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." Feldman, 460 U.S. at 482. Review of such judgments is only proper by the United States Supreme Court. Id.; see Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam) ("[The Supreme] Court is vested, under 28 U.S.C. § 1257, with jurisdiction over appeals from final state-court judgments [and] this grant of jurisdiction is exclusive.").

"The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance, 546 U.S. at 460 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). This

---

Pennoyer v. Neff, 95 U.S. 714, 732-33 (1978)). "Due process requires that the defendant be given adequate notice of the suit, and be subject to the personal jurisdiction of the court." Id. (citations omitted). Clearly, Plaintiff participated in the previous action in the Northumberland County Court of Common Pleas. She does not allege, nor could she, that she was without notice of the suit or that subject matter jurisdiction was improper. Indeed, Plaintiff initiated the state court action. In any event, the Court is first "obligat[ed] to determine if there is subject matter jurisdiction for [a] federal claim" before turning to the Full Faith and Credit Statute. In re Knapper, 407 F.3d 573, 580 n.15 (3d Cir. 2005). Thus, a Full Faith and Credit claim will not be entertained where subject matter jurisdiction is lacking. See id. Here, the Rooker-Feldman doctrine bars Plaintiff's claims.

12

"narrow doctrine [is] confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Id. at 464 (quoting Exxon Mobil, 544 U.S. at 284). "The doctrine applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Id. at 466 (quoting Exxon Mobil, 544 U.S. at 291).

> As explained in In re Knapper, 407 F.3d at 580:
>
> a claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, Rooker-Feldman bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

A constitutional claim is:

> "inextricably intertwined" with the particular decision of a state court . . . if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Finally, the Rooker-Feldman doctrine is applicable to "final decisions of lower state courts." Id. See also Fuller v. Harding, 699 F.Supp. 64, 66 (E.D. Pa. 1988) ("The Feldman/Rooker doctrine applies whether or not the

state litigation has reached the state's highest court.").

It is evident that an exercise of jurisdiction in this case would involve an in depth review of the state court's child support determination. Plaintiff's amended complaint is replete with, and based on, accusations that Defendants miscalculated Plaintiff's child support.[12]

First, Plaintiff's Taking Clause claim is founded on her insistence that Defendants deprived Plaintiff of her monetary interest in child support. (Am. Compl. at 7.) Second, Plaintiff's Procedural Due Process claim alleges irregularities and improprieties that occurred during Plaintiff's child support action in Northumberland County. (Id. at 8-9.) Third, Plaintiff's First Amendment cause of action revolves around Defendants' alleged attempts to chill Plaintiff's litigation efforts and impute income to Plaintiff throughout the child support action. (Id. at 9-10.) Plaintiff's Equal Protection claim is dependent upon her assertion that state and federal laws were applied unequally in the child support action. (Id. at 11-13.) Her "abuse of process" claim is premised upon her assertion that she was denied

---

[12] The Amended Complaint refers to child support or the child support proceedings in ¶¶ 1-23, 25, 28-33, 36-40, 44-48, 52, 55-57, 64, 66-67, 70, and 91. Further, Plaintiff's Brief in Opposition to the Motion to Dismiss contains a plethora of references to the child support action or child support. As a brief example, Plaintiff acknowledges that "most of the Defendants' conduct did occur while the parties were in state court proceedings[,]" (Pltf. Br. Opp'n at 2); Defendants misapplied the law "regarding state and federal child support enforcement[,]" (id. at 3); the Domestic Relations unit incorrectly calculated Mr. O'Neil's income, (id.); "child support is in fact a property right[,]" (id. at 4); and Plaintiff is "entitled to the correct amount of [child] support." (Id.)

14

the opportunity to "fully and fairly litigate" her child support claims.[13]  (Id. at ¶ 72.)

"[E]xamining the nature of the specific relief requested will [also] aid [the court] in determining what is being challenged and, thus, whether the district court has subject matter jurisdiction."  Centifanti, 865 F.2d at 1429 (citing Stern v. Nix, 840 F.2d 208, 212 (3d Cir. 1988)).  In her prayer for relief, Plaintiff seeks, inter alia, the "immediate payment of all child support in accordance with state/federal guidelines due and owing . . . from June 2005

---

[13] To the extent that the § 1983 abuse of process claim concerns matters other than child support, and thus is arguably not barred by Rooker-Feldman, dismissal of the claim is nonetheless compelled.  First, Plaintiff's abuse of process claim is not linked to any viable Fourth Amendment violation, as it must be.  See Golya v. Golya, No. 3:CV-05-0100, 2007 WL 2301085, at *7 (M.D. Pa. 2007); Litzenberger v. Vanim, No. Civ. A. 01-5454, 2002 WL 1759370, at *3 (E.D. Pa. July 31, 2002) (plaintiff must show Fourth Amendment violation in addition to common law elements of abuse of process to obtain redress under 42 U.S.C. § 1983); see also Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 . . . does not provide redress for common law torts – the plaintiff must allege a violation of a federal right.").  Second, Plaintiff's abuse of process § 1983 claim involves matters that she lacks standing to raise.  Standing requires: (1) "plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical,'"; (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[;]'" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted).  Particularlized means "that the injury must affect the plaintiff in a personal and individual way."  Id. at 560 n.1.  Plaintiff has not satisfied these basic requirements of standing with respect to her litany of complaints pertaining to Northumberland County government.  Finally, to the extent that Plaintiff may seek to pursue a common law claim, declination of pendant jurisdiction is appropriate given the dismissal of Plaintiff's federal law claims.  See Seal v. Univ. of Pittsburgh, 766 F. Supp. 386, 388 (W.D. Pa. 1991).

to present [and] [a]ll future child support payments as properly calculated in accordance with the law . . . ." (Am. Compl at 19.) Clearly, Plaintiff's grievance is with the common pleas court awarded child support, which she finds unsatisfactory.

Unavoidably, Plaintiff's claims arise out of her state court child support action that has already been litigated. Thus, to grant Plaintiff relief, this Court would have to find that Judge Saylor and the Pennsylvania Superior Court were wrong in their child support determinations. A district court is not empowered to take such action.

Plaintiff argues that the scope of the Rooker-Feldman doctrine was narrowed by Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), and asserts that case law cited by Defendants is not persuasive because it predates Exxon. The Court, of course, did not abrogate the doctrine entirely, instead indicating that it continued to apply in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. Moreover, Rooker-Feldman has continued to be applied in circumstances similar to those presented here, *i.e.*, a civil rights action that effectively contests a state court child support order. See, e.g., Hawks v. Abbott, No. 09-2075, 2010 WL 456907 (10th Cir. Feb. 11, 2010) (civil rights action challenging alleged miscalculation of child support barred by Rooker-Feldman doctrine); Redford v. Gwinnett County Judicial Circuit, 350 F. App'x 341, 345 (11th Cir. 2009) (district court did not err in

concluding that civil rights action challenging, inter alia, child support order was barred by Rooker-Feldman doctrine); Lawrence v. Interstate Brands, 278 F. App'x 681, 684 (7th Cir. 2008) (finding that civil rights claim asserting that defendants falsified papers in child support proceedings was barred by Rooker-Feldman); Mosley v. Bowie County Texas, 275 F. App'x 327, 329 (5th Cir. 2008) ("[plaintiffs'] claims that collaterally attack as void the state court judgment ordering the payment of child support are barred under the Rooker-Feldman doctrine because they 'invit[e] district court review and rejection' of the state child support judgment.") (citing Exxon Mobil Corp., 544 U.S. at 284); Grinage v. Caplan, Civil Action No. 09-4119, 2010 WL 962794, at *1 (E.D. Pa. Mar. 17, 2010) ("Plaintiff has requested that we issue an injunction and restraining order prohibiting the enforcement of a family court order from the Philadelphia Court of Common Pleas, which is precisely what [the Rooker-Feldman doctrine] mandates that we cannot do."). The Third Circuit Court of Appeals, in a post-Exxon case, explicitly found that a federal court action arising out of a contested child support order "falls squarely within the *Rooker-Feldman* doctrine." Eisenstein v. Ebsworth, 148 F. App'x 75, 77-78 (3d Cir. 2005).

In Van Tassel, supra, the court dismissed on Rooker-Feldman grounds claims indistinguishable from those presented here. In that case, the *pro se* plaintiff brought a civil action arising from child support proceedings conducted in the Court of Common Pleas of Lawrence County, alleging that her former husband along with the Lawrence County

Domestic Relations Section and various other defendants "caused certain irregularities in those proceedings" in violation of her constitutional rights. Van Tassel, 659 F. Supp. 2d at 675. The district court found that the child support order that plaintiff referred to throughout her amended complaint was "central" to her action. Id. at 676 n.2. The plaintiff claimed, inter alia, that the Domestic Relations unit miscalculated overdue child support that was due, and that the Judge who presided over the child support proceedings made a number of incorrect legal rulings. Id. at 677. Additionally, plaintiff maintained that the defendant and his attorney "acted improperly during those proceedings." Id. After a number of proceedings involving the question of child support in front of Domestic Relation hearing officers, family motion court, and the court of common pleas, the court of common pleas awarded defendant attorney's fees for plaintiff's "vexatious[]" lawsuit. Id. at 682. Plaintiff brought a section 1983 action asserting violations of substantive and procedural due process, equal protection, and right of access to the court system. Id. at 677. In dismissing the action, the district court found:

> To the extent that any of Plaintiff's claims seek relief from injuries caused by the [child support] Order (or any of the earlier orders) including her rights to procedural and substantive due process, equal protection under the laws and the right to freely access the courts, and any related retaliation claims, said claims are clearly barred by the Rooker-Feldman doctrine.

Id. at 691. The district court reasoned that "the harm claimed by Plaintiff in [this action] is clearly caused by the state court [child support] order and, thus, these counts are barred by

the Rooker-Feldman doctrine." Id. (citation omitted).  Accordingly, the court held that it did not have jurisdiction over plaintiff's alleged constitutional violations.  Id. at 692.  Appropriately, the court dismissed all of plaintiff's claims and denied plaintiff leave to amend the complaint.  Id. at 700-01.

As in Van Tassel,  this Court lacks jurisdiction.  Accord Ludwig v. Berks Co., Civil Action No. 07-2127, 2007 WL 2463306 (E.D. Pa. Aug. 28, 2007) (dismissing claims in part because of lack of jurisdiction); McCurdy v. Esmonde, No. Civ.A.02-4614, 2003 WL 223412 (E.D. Pa. 2003) (dismissing § 1983 claim for lack of jurisdiction).  Accordingly, this action will be dismissed.[14]

III.     CONCLUSION

For the reasons set forth above, this Court lacks jurisdiction to consider Ms. Krankowski's claims.  Consequently, Defendants' motion to dismiss will be granted.  An appropriate Order follows.

                                             s/ Thomas I. Vanaskie
                                             Thomas I. Vanaskie
                                             United States District Judge

---

[14]  Even though Mr. McNeil is not included in the Motion to Dismiss (Dkt. Entry 23), dismissal of the action as to McNeil is warranted because lack of subject matter may be raised sua sponte, and this Court may not proceed in the absence of jurisdiction.  Van Tassel, 659 F. Supp. 2d at 700-01.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN KRANKOWSKI, et al. | : | |
| | : | |
| Plaintiffs | : | 08-CV-1595 |
| | : | |
| v. | : | JUDGE VANASKIE |
| | : | |
| TIMOTHY O'NEIL, et al., | : | |
| | : | |
| Defendants | : | |

ORDER

NOW, THIS 26th DAY OF MARCH, 2010, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Unrepresented Minor Plaintiff Kaitlin O'Neil is DISMISSED, WITHOUT PREJUDICE.

2. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. Entry 23) is GRANTED.

3. Defendants' Motion to Withdraw Appearance on behalf of Defendant O'Neil (Dkt. Entry 19) is GRANTED.

4. The Clerk of Court is directed to mark this action CLOSED.

                s/ Thomas I. Vanaskie
                Thomas I. Vanaskie
                United States District Judge